UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-14332-Civ-Graham
(03-14033-Cr-Graham)
MAGISTRATE JUDGE P. A. WHITE

KYLE EBRITE WILLIAMS,    :

       Movant,    :

v.    :       <u>REPORT OF</u>
        <u>MAGISTRATE JUDGE</u>

UNITED STATES OF AMERICA  :

       Respondent.    :

_____

    This matter is before this Court on the movant's motion to vacate pursuant to 28 U.S.C. §2255, attacking his conviction and sentences for conspiracy to manufacture methamphetamine, entered following a jury verdict in case no. 03-14033-Cr-Graham.

    The Court has reviewed the motion (Cv-DE#1) with accompanying memorandum of law (Cv-DE#2), the government's response with exhibits (Cv-DE#9), the Pre-sentence Investigation Report (PSI), and all pertinent portions of the underlying criminal file.

<u>Claims Raised</u>

    Construing the movant's arguments liberally as afforded *pro se* litigants pursuant to <u>Haines v. Kerner</u>, 404 U.S. 419 (1972), the movant appears to raise the following claims in his §2255 motion:

1.   Count One of the Second Superseding Indictment failed to charge an offense. (Cv-DE#2:i).

1

2.  He was denied effective assistance of pre-trial counsel when his lawyer:

a. failed to file a motion to suppress the alleged confession. (Cv-DE#2:6).

b. failed to properly investigate the movant's case. (Cv-DE#2:10).

c. failed to retain an investigator. (Cv-DE#2:16).

d. failed to investigate the need for an independent expert. (Cv-DE#2:18).

3.  He was denied effective assistance of trial counsel when his lawyer:

a. failed to interview any witnesses. (Cv-DE#2:20).

b. failed to subpoena any witnesses or call any witnesses to the stand. (Cv-DE#2:20).

c. failed to argue that the Second Superseding Indictment did not charge an offense. (Cv-DE#2:20).

d. failed to object to the jury instructions as it related to the conspiracy charge. (Cv-DE#2:20).

e. failed to adequately cross-examine the government's witnesses. (Cv-DE#2:20).

f. failed to present a theory of defense. (Cv-

DE#2:20).

4.    He was denied effective assistance of trial counsel
when his lawyer failed to file a motion for new trial.
(Cv-DE#2:27).

5.    The government attorney was ineffective for failing
to disclose witness Genero Rosales. (Cv-DE#2:28).

To the extent the claims raised in his motion are inter-
related or duplicative, those issues will be discussed together.

## Factual and Procedural History

On May 28, 2003, a search warrant was executed at the
residence of 2805 U.S. Highway 27 South, Apartment 6, Sebring,
Florida. (PSI¶4). The search warrant was obtained following reports
that the movant was selling firearms from the home, along with
methamphetamine. (Id.). Inside the residence, at the time of the
search, were the movant, Sharon Higgins and Steven Schock. (Id.).
During the search, a non-operational methamphetamine production
laboratory was discovered. (Id.).

Inside the bedroom, in plain view, there was a "u" shaped
glass tube, a container of phosphorus, and a partially filled quart
can of Acetone. (PSI¶6). Inside a dresser drawer, there were five
empty boxes of pseudo-ephedrine, a bottle containing nine
unidentified pills, a torch tip and a brown jar containing an
unidentified liquid. (Id.). On the floor, there was a black nylon
case containing a syringe. (Id.). Inside a night stand in the
bedroom, there was a pill bottle containing methamphetamine, a
plastic bag containing unidentified red and gray capsules and 12

3

rounds of ammunition. (Id.). Additionally, on the bedroom floor, a blue box was found containing a burner, several flasks, two funnels and a jar containing an unidentified chemical, along with other paraphernalia. (Id.). In the bathroom trash, there was a box containing a syringe and an unknown substance. (Id.). According to SA Kent and the DEA chemist, who testified at trial, the paraphernalia found in the residence are commonly used in the manufacturing of methamphetamine. (Id.). The six blister packs for the pseudo-ephedrine showed that they once contained 24 tablets of 60 mg tablets for a total of 144 pills, which subsequent laboratory testing of the paraphernalia in the blue box revealed methamphetamine residue. (Id.).

Moreover, agents observed a stain on the carpet and wall, where an apparent spill occurred. (PSI¶7). Likewise, towels, found in the closet, had similar stains to those found on the carpet and wall, which a subsequent laboratory testing revealed contained methamphetamine residue. (Id.).

During the movant's and Higgins' post arrest statements, they each stated that Beaudarick Cochise was the primary cook who produced the methamphetamine with the contraband found inside the residence. (PSI¶8). According to them, Cochise was the owner of the laboratory equipment. (Id.). His identification card was found in the bedroom inside of the residence; Cochise was subsequently arrested on June 2, 2003. (Id.).

The movant admitted a spill occurred while Cochise produced the drugs and stated that he and Cochise were able to recover an "eight ball" of methamphetamine after the spill. (PSI¶9).

Higgins acknowledged that the movant sold and used

4

methamphetamine. (PSI¶10). According to her, the movant intended to make the drugs himself, but needed money to buy the equipment and chemicals. (Id.). She further stated, Cochise brought the laboratory equipment to the house with the movant's help. (Id.). Higgins thereafter, in order to limit her involvement, left the house. (Id.). However, when she returned, she noticed the damage to the walls and carpet. (Id.).

During his post-arrest statement, Cochise advised that although the methamphetamine he produced was for personal use, he provided samples to friends. (PSI¶12). According to Cochise, the movant asked Cochise to teach him how to produce Hydriatic Acid, a necessary ingredient to produce methamphetamine. Accordingly, Cochise stated that the chemical stains found in the apartment were from the "teaching" process. (Id.).

The procedural history of the underlying criminal case reveals that the movant was charged by a Second Superseding Indictment with conspiracy to manufacture methamphetamine, in violation of 21 U.S.C. 841(a)(1), all in violation of 21 U.S.C. 846 (Count One) and a convicted felon in possession of a firearm, in violation of 18 U.S.C. §§922(g)(1) and 922(a)(2) (Count Two). (Cr-DE#79).

On November 13, 2003, the movant proceeded to trial, after conclusion of a two day trial, he was found guilty as to Count One only. (Cr-DE#97). The Jury was unable to come to a unanimous decision as to Count Two. (Id.). Consequently, the government moved to dismiss said count,(Cr-DE#98) which was thereafter granted. (Id.).

A PSI was subsequently prepared for sentencing, which determined that the guideline for a 21 U.S.C. §841(a)(1) offense is

5

found in U.S.S.G. §2D1.1(a)(3), which provides than an offense involving possession with intent to distribute at least 5 grams but less than 20 grams of methamphetamine has a base offense level of 26. (PSI22). The movant was found responsible for 6.5 grams of methamphetamine. (Id.). Moreover, two levels were added to the base offense level because the movant possessed a dangerous weapon, pursuant to U.S.S.G. §2D1.1(b)(1). The total offense level was set at 28. (PSI¶30).

The probation officer further determined that the movant had a subtotal of six criminal history points. (PSI¶38). However, because the movant committed the offense less than two years from release from custody, pursuant to U.S.S.G. §4A1.1(e), two points were added. (PSI¶39). As a result, the movant has a total of eight criminal history points and a criminal history category of IV. (PSI¶40). Based on a total offense level of 28 and a criminal history category of IV, the guideline imprisonment range was 110 to 137 months. (PSI¶77).

On January 26, 2004, the movant, through counsel, filed a "notice of adopting oral objections as transcribed in 'addendum to the pre-sentence report,'" wherein counsel provided two arguments, to wit: the movant was inappropriately held accountable for 6.5 grams of methamphetamine and the two level enhancement for possession of the firearm was unwarranted. (Cr-DE#101).

Thereafter, on January 28, 2004, at the sentencing hearing, the Court determined that the movant was responsible for 4.7 grams of methamphetamine, not 6.5 grams stated in the PSI. (Cv-DE#9,Ex.5:21). Moreover, the Court determined that with respect to the firearm, because the movant admitted to possessing the firearm, the enhancement applied. (Id.:21-22). The Court then sentenced the

6

movant to 92 months in prison, 3 years of supervised release and $100 special assessment. (Cr-DE#105).

The judgment was entered by the Clerk on February 4, 2004. (Cr-DE#105). Then, on that same day, the movant filed his notice of appeal. (Cr-DE#106). Thereafter, on November 29, 2004, the Eleventh Circuit, *per curiam*, affirmed the movant's judgment and conviction. (Cr-DE#125). On October 3, 2005, the Supreme Court granted the movant's motion for writ of certiorari, subsequently vacating his judgment. (Cv-DE#9,Ex.11). The case was remanded to the Eleventh Circuit for further consideration in light of <u>United States v. Booker</u>, 543 U.S. 220 (2005).

Then, on November 17, 2005, the Eleventh Circuit issued its mandate, wherein the movant's conviction was vacated and remanded to the District Court for re-sentencing. (Cr-DE#127).  On May 12, 2006, the movant was re-sentenced to the same term of imprisonment and supervised release he previously received. (Cv-DE#9,Ex.14). The amended judgment was entered by the Clerk on May 23, 2006. On that same day, once again, the movant filed a notice of appeal. (Cr-DE#141). Thereafter, on May 30, 2006, the movant filed an amended notice of appeal, correctly reflecting the movant's name. (Cr-DE#142). On June 5, 2007, the Eleventh Circuit, *per curiam*, affirmed in part, the sentence. (Cr-DE#152). However, the case was vacated and remanded for correction of a clerical error. (<u>Id.</u>). Subsequently, on October 9, 2007, the Supreme Court denied the movant's writ of certiorari.(Cv-DE#9,Ex.19). Thus, the judgment of conviction in the underlying criminal case became final at the latest on October 9, 2007, when certiorari review was denied by the

Supreme Court.[1] See United States v. King, et al., 66 Fed.Appx. 844 (11th Cir. 2003)(table), cert. den'd, 540 U.S. 902 (2003). The motion to vacate was timely filed, less than one year later, on September 9, 2008.[2] (Cv-DE#1).

<u>Discussion of Claims</u>

First, it should be noted that **claims one and five**, could have been, but were not raised on direct appeal. Because the claims were not raised on direct appeal, they are procedurally barred from review in this collateral proceeding unless the movant can show cause for the default and actual prejudice, <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977), or a fundamental miscarriage of justice. <u>Engle v. Isaac</u>, 456 U.S. 107 (1982).

The movant, in this collateral proceeding, neither shows cause for failing to raise the issue on direct appeal nor does he show any actual prejudice as a result therefrom. Accordingly, the movant's claims are without merit. Notwithstanding, the claims will be addressed *infra*.

Moreover, it should be noted that **claims two, three and four,** could have been, but were not raised on direct appeal.

---

[1] The Supreme Court has stated that a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. <u>Griffith v. Kentucky</u>, 479 U.S. 314, 321, n.6 (1986); <u>accord</u>, <u>United States v. Kaufmann</u>, 282 F.3d 1336 (11th Cir. 2002). Once a judgment is entered by a United States court of appeals, a petition for writ of certiorari must be filed within 90 days of the date of entry. The 90 day time period runs from the date of entry of the judgment rather than the issuance of a mandate. <u>Sup.Ct.R</u>. 13; <u>see</u> <u>also</u>, <u>Close v. United States</u>, 336 F.3d 1283 (11th Cir. 2003).

[2] <u>See</u>: <u>Adams v. U.S.</u>, 173 F.3d 1339 (11th Cir. 1999)(prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

Notwithstanding, construing the argument made by the movant in support thereof, he appears to argue that counsel was ineffective for failing to pursue the claim either at trial or on direct appeal. A claim of ineffective assistance of counsel may constitute cause for failure to previously raise the issue. United States v. Breckenridge, 93 F.3d 132 (4th Cir. 1996). Attorney error, however, does not constitute cause for a procedural default unless it rises to the level of ineffective assistance of counsel under the test enunciated in Strickland v. Washington, 466 U.S. 668 (1984); Murray v. Carrier, 477 U.S. 478, 488 (1986). Thus, each claim will be identified and treated in turn in this Report, *infra*.

In order for the movant to prevail on a claim of ineffective assistance of counsel, he must establish that 1) his counsel's representation fell below an objective standard of reasonableness; and 2) but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668 (1984). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. Id. at 697; Waters v. Thomas, 46 F.3d 1506, 1510 (11th Cir. 1995). Prejudice in the sentencing context requires a showing that the sentence was increased due to counsel's error. Glover v. United States, 531 U.S. 198, 203-04 (2001).

Moreover, review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11th Cir. 1992). Because a "wide range" of

performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." <u>Rogers v. Zant</u>, 13 F.2d 384, 386 (11th Cir. 1994).

Bare and conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported by affidavits or other indicia of reliability, are insufficient to require a hearing or further consideration. <u>See</u> <u>United States v. Robinson</u>, 64 F.3d 403, 405 (8th Cir. 1995), <u>Ferguson v. United States</u>, 699 F.2d 1071 (11th Cir. 1983), <u>United States v. Ammirato</u>, 670 F.2d 552 (5th Cir. 1982); <u>United States v. Sanderson</u>, 595 F.2d 1021 (5th Cir. 1979).

In **claim one**, the movant asserts that Count One of the Second Superseding Indictment failed to charge an offense. (Cv-DE#2:i). Specifically, he argues that the indictment is insufficient as it fails to name any other co-conspirator. (<u>Id.</u>:2). Moreover, he argues that the indictment is further deficient in that it fails to include the term "agrees with one another," as such, the indictment omits the mens rea element of the conspiracy. (<u>Id.</u>:5).

Count One of the Second Superseding Indictment reads:

> Beginning on or about May 14, 2003, and continuing until on or about May 28, 2003, in Highlands County, in the Southern District of Florida, the defendants [sic], Kyle Ebrite Williams, did knowingly and intentionally combine, conspire, confederate, and agree with persons known and unknown to the grand jury, to manufacture a Schedule I narcotic controlled substance, that is, methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1).
>
> All in violation of Title 21, United States Code, Section 846.

Generally, an indictment is sufficient if it states the elements of the offense charged, is sufficiently detailed to apprise the defendant of the charge against him so that he can

10

prepare a defense, and it states enough facts and information to allow it to be used as proof to bar subsequent prosecution of the defendant on the same facts. Fed. R. Crim. P. (7)(c). Moreover, when analyzing challenges to sufficiency of indictment, courts give the indictment a common sense construction, and its validity is to be determined by practical, not technical, considerations. United States v. Poirier, 321 F.3d 1024 (11th Cir. 2003).

In the original indictment, the movant and co-defendant Cochise, were named as co-conspirators with each other, along with persons known and unknown to the grand jury. (Cr-DE#1). However, on August 4, 2003, co-defendant Cochise pleaded guilty to conspiracy to manufacturing over 5 grams of methamphetamine as charged in Count One of the Indictment. (Cv-DE#9,Ex.22). As part of the plea agreement, Cochise agreed to cooperate with the government. (Id.). Likewise, in his post arrest statement, Cochise admitted that he cooked methamphetamine and that he had been teaching the movant how to cook it as well. (Cv-DE#9,Ex.23).

In the First Superseding Indictment, after Cochise pleaded guilty, the movant and co-defendant Steven Schock were named as co-conspirators with each other and with persons known and unknown to the grand jury. (Cr-DE#53). However, on November 4, 2003, after the government sought dismissal of the indictment as to Schock only, the District Court ordered the indictment dismissed. Thus, when the Second Superseding Indictment was filed on October 30, 2003, the movant was the only person named along with "persons known and unknown" to the grand jury. (Cr-DE#79). Notwithstanding, the Second Superseding Indictment was not insufficient.

The Eleventh Circuit, has held that an indictment need not provide the names of co-conspirators . . . . United States v.

Gospidon, 224 Fed. Appx. 940; See United States v. Arbane, 446 F.3d 1223, 1228 n.8 (11th Cir. 2006). "While it is the law of this Circuit than 'an individual can be convicted of conspiracy with 'unknown persons' referred to in the indictment,'" the government must prove the existence of these persons. See Arbane, 446 F.3d at 1228 n.8. In this collateral proceeding, the government has proven the existence of at least one other co-conspirator, Cochise, who pleaded guilty to said conspiracy. As such, Count One of the Second Superseding Indictment was not insufficient for failing to name any other co-conspirator.

To the extent the movant means to argue that the indictment was deficient in that it failed to include the term "agrees with one another," as such, the indictment omits the mens rea element of the conspiracy, this claim is without merit. A review of the indictment reflects such intent, in that it states that the movant "did knowingly and intentionally combine, conspire, confederate, and **agree with** persons known and unknown to the grand jury." Accordingly, this claim is also without merit and as a result, the movant is entitled to no relief therefrom.

In **claim two(a)**, the movant asserts that he was denied effective assistance of pre-trial counsel when his lawyer failed to file a motion to suppress the alleged confession. (Cv-DE#2:6). He appears to assert because the confession had an extremely prejudicial value and was the primary evidence offered to connect him with Cochise, counsel was ineffective for failing to file a motion to suppress the confession. (Id.). Likewise, he asserts, because his statement was coerced and not properly recorded, counsel was ineffective for failing to file the motion to suppress. (Id.).

In this case, review of the underlying criminal record and the
trial transcripts reveal the movant's post-arrest statement was
made voluntarily. He waived his right to remain silent voluntarily,
in that the waiver was the product of a free and deliberate choice
rather than intimidation, coercion or deception. <u>Moran v. Burbine</u>,
475 U.S. 412 (1986). The movant was advised of his Miranda rights
on two distinct occasions, once by Detective Reinhart and then
again by SA Kent of the DEA. (Cv-DE#9,Ex.3:25-26,103-113).
Moreover, SA Kent utilized a Miranda form, which the movant signed
and stated that he had been advised of his rights and that he
voluntarily waived those rights. (Cv-DE#9,Ex.26).

Moreover, Detective Reinhart and SA Kent's testimony at trial,
established that the movant's statement was voluntarily made.
Although Detective Reinhart stated in the affirmative that the
movant was threatened, after a review of the entire trial
transcript, it appears that the movant's confession was voluntary.
The testimony further revealed that the interview took place in a
12 by 10 feet booking room, with pleasant conditions, at the
Highlands County Jail. (Cv-DE#2,Ex.A:41,106). The testimony also
revealed that the movant was relaxed and outgoing during his
interview. (<u>Id.</u>:106) Although the interview was not recorded, SA
Kent took notes and read them to the movant, which he thereafter
signed, confirming their accurateness. (Cv-DE#9,Ex.27;Cv-
DE#2,Ex.A:39-40).

On the record before this court, the movant fails to proffer
any objective evidence to support his self-serving allegation that
his statement was coerced. No showing has been made that the movant
ever invoked his right to counsel and wanted the interrogation
ceased. He now attempts to fault counsel for failing to raise this
argument at a suppression proceeding. Even if counsel had pursued

the issue, there is nothing of record to suggest that a suppression motion would have been granted. Under the circumstances presented here, where the likelihood of success on the motion has not been established, the movant has failed to prove either deficient performance or prejudice arising from counsel's failure to file a motion to suppress. <u>See</u> <u>Owens v. Wainwright</u>, 698 F.2d 1111, 1113-1114 (11th Cir. 1983)(petitioner's trial counsel not ineffective due to failure to file motion to suppress where motion had little chance of success).

In **claims two(b) and two(c)**, the movant asserts that he was denied effective assistance of pre-trial counsel when his lawyer failed to properly investigate the case and hire a private investigator. (Cv-DE#2:16,18). Specifically, he argues that counsel failed to interview potential defense witnesses, co-defendants, law enforcement, hire a private investigator or call any witnesses at trial; to wit: Sharon Higgins, Steven Schock, Wendy Schock or Beaudarick Cochise. (<u>Id.</u>).

This claim, as worded, is bereft of record support. Regardless, even assuming the facts as alleged by the movant are true, no showing has been made that counsel's alleged deficiencies affected the outcome of the guilt phase portion of the movant's trial. Under these circumstances, the movant cannot establish prejudice pursuant to <u>Strickland</u> and is entitled to no relief from this claim.

The movant has attached unsworn affidavits from Steven Schock and Wendy Schock, stating that had defense counsel contacted them, they would have testified that the movant was not involved in any conspiracy to manufacture methamphetamine. (Cv-DE#2,Exs.E,D). It should first be noted that post-trial, self-serving

14

affidavit/letter, such as the one relied upon by the movant in this case are viewed with extreme suspicion. See Drew v. Scott, 28 F.3d 460, 462-63 (5 Cir.), cert. denied, 512 U.S. 1266 (1994). See also May v. Collins, 955 F.2d 299, 314 (5th Cir. 1992) and cases cited therein, cert. denied, 504 U.S. 901 (1992)(when faced with recanting affidavits, trial court may make credibility choice in favor of trial testimony without taking additional live testimony). The unsworn affidavit submitted post trial claiming to exculpate the movant is highly suspect, especially given the evidence at trial which established that the movant was actively involved in the offenses of conviction.

Despite the facts that the documents purportedly signed by Steven Schock and Wendy Schock are titled "affidavit," they are not notarized or shown to be witnessed in any capacity, as such, they fail to be considered sworn statements of facts. As a result, there is no proof that the documents presented therein were in fact statements that either Steven Schock or Wendy Schock attested to. Regardless, even if the documents were generated by them, no prejudice has been established arising from counsel's failure to pursue this claim. The alleged notes clearly state that they would have no problem testifying that the movant was not involved in a conspiracy to manufacture methamphetamine. (Cv-DE#2,Exs.E,D). Thus, even if counsel had interviewed them, no showing has been made that this witness would have testified as proffered. Moreover, even if it were shown that they would have testified as proffered, the testimony is of no import as the movant cannot establish that this testimony would have altered the outcome of the proceedings.

The government called Detective Reinhart and SA Kent, who both testified that the movant participated in the manufacturing of methamphetamine, this, corroborated with his confession, implicated him in the conspiracy. (Cv-DE#2,Ex.A). Moreover, Steven Schock and

15

Wendy Schock also would have been subject to cross-examination and their credibility would have been called into question before the jury. Clearly, the Schocks' proffered statements when viewed in light of the evidence would not have affected the outcome of the movant's criminal proceeding. This court finds Steven Schock's and Wendy Schock's documents highly suspect and of no consequence.

Moreover, the testimony of Wendy Schock would have been highly suspect because she was not present when the search warrant was executed. As such, trial counsel cannot be faulted for failing to interview a witness who had no personal knowledge of the events which transpired.

To the extent the movant argues that counsel was ineffective for failing to interview or call Higgins or Cochise at trial, this claim is without merit.

First, no affidavit or other objective evidence has been established to support the movant's allegation that Higgins and Cochise would have testified as proffered. Bare and conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported by affidavits or other indicia of reliability, are insufficient to require a hearing or further consideration. See United States v. Robinson, 64 F.3d 403, 405 (8th Cir. 1995), Ferguson v. United States, 699 F.2d 1071 (11th Cir. 1983), United States v. Ammirato, 670 F.2d 552 (5th Cir. 1982); United States v. Sanderson, 595 F.2d 1021 (5th Cir. 1979).

Likewise, counsel was prudent in not placing Higgins on the stand, as her post-arrest interview reveals, she left the apartment when the "cook" took place and upon her return, she noticed damage to the walls and carpet. (Cv-DE#24:6). Further, according to Higgins, the movant admitted that an accident occurred while

producing the drugs causing damage to the walls and carpet. (<u>Id.</u>).

Finally, the movant cannot prevail on this claim as counsel's strategic decision cannot be second-guessed in this proceeding. It is possible that calling the witnesses who would have invoked his Fifth Amendment rights could have tainted the jury's perception of the movant's guilt, and undermined the movant's defense or tainted the jury's perception of the movant's guilt, and undermined the movant's defense. Scrutiny of an attorney's performance is highly deferential, therefore, reviewing courts will not second-guess strategic decisions; rather, the attorney's performance is evaluated in light of all the circumstances as they existed at the time of the conduct, and is presumed to have been adequate. <u>Strickland v. Washington</u>, 466 U.S. 668, 689-90 (1984). Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. <u>Id.</u> at 690-91. Even if in retrospect the strategy to pursue one line of defense over another appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it. <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1445 (11th Cir. 1983). Accordingly, tactical or strategic choices by counsel cannot support a collateral claim of ineffective assistance. <u>United States v. Costa</u>, 691 F.2d 1358 (11th Cir. 1982); <u>Coco v. United States</u>, 569 F.2d 367 (5th Cir. 1978). In this case, counsel's strategic decision to forego calling these witnesses does not rise to the level of ineffective assistance. The movant has thus failed to establish deficient performance or prejudice pursuant to <u>Strickland</u>, <u>supra</u> and is thus entitled to no relief on this claim.

To the extent the movant argues that counsel was ineffective for failing to petition the court for funds to hire a private investigator, this claim is also without merit. The movant further

17

argues that had counsel hired an investigator, making the same
assertions listed above, an interview of Higgins, Steven Schock and
Cochise would have provided him with a defense. (Cv-DE#2:16).
Moreover, he argues that an investigator would have also
interviewed Detective Reinhart and SA Kent, thus possibly bringing
into question the validity of the movant's alleged confession.
(Id.). However, the movant failed to show what, if any, additional
information the investigator would have uncovered that would have
made a difference in trial.  Moreover, as previously established,
the testimony presented at trial revealed that the movant's
confession was voluntary. As such, the movant has failed to show
that his trial counsel's failure to hire an investigator was
prejudicial. Under these circumstances, counsel's decision to not
hire an investigator does not rise establish deficient performance
or prejudice pursuant to Strickland, supra.


        In **claim two(d)**, the movant asserts that he was denied
effective assistance of pre-trial counsel when his lawyer failed to
investigate the need for an independent expert. (Cv-DE#2:18).
According to the movant, an expert would have determined that the
stains on the towel was not as a result of methamphetamine residue
or iodine, but rather from Higgins' hair dye. (Cv-DE#2:18). The
movant maintains that an independent expert, should have, after
testing, shown that the results of the towels and the containers,
which allegedly contained methamphetamine residue, varied among
experts. (Id.).


        First of all, no affidavit or other objective evidence has
been provided to establish that an expert would have testified as
proffered by the movant. Such a bare and conclusory allegation,
without record support, must fail. Machibroda v. United States, 368
U.S. 487 (1962).

Moreover, the movant cannot prevail on this claim as counsel's strategic decision cannot be second-guessed in this proceeding. It is possible that retaining and then calling such an expert would merely have confirmed what the government's evidence already established. That is, that methamphetamine was detected in the containers as tested. (Cv-DE#2,Ex.A:61-71). In this case, counsel's strategic decision to forego calling an independent expert as a defense witness at trial or either sentencing proceeding does not rise to the level of ineffective assistance. The movant has thus failed to establish deficient performance or prejudice stemming from counsel's failure to retain an expert and call said expert as a defense witness.

In **claim three**, the movant asserts that he was denied effective assistance of trial counsel when his lawyer failed to adequately prepare for trial. (Cv-DE#2:20).

In **claim three(a)**, the movant argues that counsel failed to interview witnesses. (Id.). This is a mere reiteration of the arguments raised in relation to **claim two** above, and should be denied for the reasons expressed therein.

In **claim three(b)**, the movant argues that counsel failed to subpoena witnesses or call any witnesses to the stand. (Id.). Counsel's decision to not call a witness is presumed to be trial strategy and will not support a movant's claim unless he can clearly establish otherwise.

A review of the investigation reports reveal that any testimony from Cochise, Higgins or Steven Schock would have incriminated the movant. (Cv-DE#9,Exs.22,24). Moreover, even the movant's own investigation report reveals that he admitted to his involvement with manufacturing methamphetamine. (Cv-DE#9,Ex.24). As

19

such, it was prudent of counsel not to call the aforementioned adverse witnesses since their reports reflect that the movant conspired to manufacture methamphetamine.

Specifically, Cochise's post-arrest interview reveals that the movant requested Cochise to teach him how to produce hydriatic acid, an ingredient necessary to produce methamphetamine. (Cv-DE#9,Ex.23:2). Cochise further stated that the chemical stains found in the apartment were from the "teaching process." (Id.).

Moreover, Cochise pleaded guilty to Count One of the Indictment, which charged him with conspiracy to manufacture 5 grams or more of methamphetamine. (Cv-DE#9,Ex.22). As part of the plea agreement, Cochise agreed to fully cooperate with the office of the United States Attorney. (Id.:2). In exchange, if the government, in its sole judgment, finds that his cooperation was of such significance they had the option to file a motion pursuant to U.S.S.G. §5K1.1 or a Rule 35 motion. (Id.). Consequently, if defense counsel would have called Cochise to the stand, it was more likely than not, that Cochise would have testified in a manner which further incriminated the movant.

As may be recalled, during Higgins' post-arrest interview, she admitted knowing about the methamphetamine laboratory; however, she took steps "not to know too much." (Cv-DE#9,Ex.24:6). She further acknowledged that the movant was selling and using methamphetamine. (Id.). Moreover, a week before the movant and Cochise conducted the "cook," the movant informed Higgins that he planned to make money selling methamphetamine and that he intended to make the drugs himself, but needed money to buy the equipment and chemicals. (Id.).

Moreover, Higgins stated that on the day the methamphetamine

was cooked at her apartment, Cochise brought the laboratory components to the house with the movant's help. (Cv-DE#9,Ex.24:6). Although, she left the apartment when the "cook" occurred, upon her return, she noticed damage to the walls and carpet. (Id.). According to Higgins, the movant admitted that an accident happened while producing the drugs, but assured that anything dangerous was or was in the process of being removed from the apartment. (Id.). Consequently, if defense counsel would have called Higgins to the stand, it was more likely than not, that Higgins would have also testified in a manner which further incriminated the movant.

Although, during his post-arrest interview, Steven Schock requested an attorney, it appears that his story up that point, would have corroborated the statements made by both Cochise and Higgins, implicating the movant. Under these circumstances, counsel's strategic decision to not call any witnesses does not establish deficient performance or prejudice pursuant to Strickland, supra.

In **claim three(c)**, the movant argues that counsel failed to argue that the Second Superseding Indictment did not charge an offense. (Id.). This claim is a mere reiteration of the arguments raised in relation to **claim one** above, and should be denied for the reasons expressed therein.

In **claim three(d)**, the movant argues that counsel failed to object to the jury instructions as it related to the conspiracy charge. (Id.). Specifically, he argues the District Court erred when it instructed the jury that the government need not prove that all the people named in the Second Superseding Indictment entered into any formal type of agreement, when there were no other names listed in the Second Superseding Indictment. (Id.). This claim is a mere reiteration of the arguments raised in relation to **claims**

21

**one** and **three(c)** above, and should be denied for the reasons expressed therein.

In **claim three(e)**, the movant argues that counsel failed to adequately cross-examine the government's witnesses. (<u>Id.</u>). The movant maintains that had counsel properly investigated and interviewed the government's witnesses, he would have learned that iodine is a metal, thereby calling into question the expert's testimony. (Cv-DE#2:25). Moreover, the movant maintains that counsel's cross-examination of Detective Reinhart and SA Kent lacked direction and meaning. (<u>Id.</u>:26).

The movant cannot establish deficient performance because there is nothing of record, other than the movant's own self-serving declaration. He only offers speculation and conclusions by repeating the same claims of alleged ineffectiveness.

Moreover, counsel did in fact effectively challenge the government's case. The jury came back hung on Count II, which eventually led to its dismissal. Likewise, counsel persuasively argued to the trial court to sentence the movant based on the low-end of the theoretical yield. Under these circumstances, the movant fails to establish deficient performance or prejudice pursuant to <u>Strickland</u>, <u>supra</u>.

In **claim three(f)**, the movant argues that counsel failed to present a theory of defense. (<u>Id.</u>). In support thereof, the movant argues that counsel failed to prepare for trial and failed to call any witnesses on his behalf. (Cv-DE#2:26). This claim is a mere reiteration of the arguments raised in relation to **claims two** and **three(b)**above, and should be denied for the reasons expressed therein.

In **claim four**, the movant asserts that he was denied effective assistance of trial counsel when his lawyer failed to file a motion for new trial. (Cv-DE#2:27). In support thereof, the movant argues that counsel, prior to the jury returning a verdict, learned from John Boyd, that Cochise lied to the government regarding the movant's involvement with the conspiracy. (Id.). As such, counsel should have filed a motion for new trial pursuant to Fed. R. Civ. P. (33)(b)(1), pursuant to this newly discovered evidence. (Id.).

First, no affidavit or other objective evidence has been established to support the movant's allegation that Boyd would have testified as proffered. Bare and conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported by affidavits or other indicia of reliability, are insufficient to require a hearing or further consideration. See United States v. Robinson, 64 F.3d 403, 405 (8 Cir. 1995), Ferguson v. United States, 699 F.2d 1071 (11 Cir. 1983), United States v. Ammirato, 670 F.2d 552 (5 Cir. 1982); United States v. Sanderson, 595 F.2d 1021 (5 Cir. 1979). Moreover, the movant cannot establish deficient performance because there is nothing of record, other than the movant's own self-serving declaration.

Moreover, Boyd's alleged statements are irrelevant as Cochise never testified at trial, therefore, an attack on Cochise's credibility is unwarranted. Regardless, even assuming the facts as alleged by the movant are true, the testimony adduced at trial was so overwhelming against the movant, that he cannot demonstrate prejudice for counsel's failure to file a motion for new trial. Accordingly, the movant fails to establish deficient performance or prejudice pursuant to Strickland, supra.

In **claim five**, the movant asserts that the government attorney

was ineffective for failing to disclose witness Genero Rosales. (Cv-DE#2:28). Specifically, the movant argues that prior to trial, the government attorney was approached by Rosales explaining that Cochise bragged about setting the movant up for a conspiracy charge in order to receive a downward departure; however the government attorney failed to inform defense counsel about Rosales' existence. (Id.).

In support thereof, the movant provides an unsworn affidavit, stating that Cochise informed Rosales that Cochise would testify against Williams, in hopes of receiving a downward departure. (Cv-DE#2,Ex.J). Moreover, according to the unsworn affidavit, Cochise admitted to Rosales that the movant had nothing to do with the manufacturing of methamphetamine. (Id.).

Although the government does not dispute that Rosales provided the government with information that Cochise lied, the government was aware that Cochise was making inconsistent statements and as a result, the government never called Cochise as a witness. Accordingly, Rosales would never have been able to testify at trial. Notwithstanding, the government's case relied on the physical evidence seized during the search, expert testimony and the movant's confession. Thus, even if the government had informed defense counsel of Rosales' statements, the evidence introduced at trial was so overwhelming, that the movant fails to demonstrate how Rosales' statements would have affected the trial's guilt phrase portion.

Moreover, the government is not compelled to disclose any statements or reports in its possession which was made by a government witness or prospective government witness until said witness has testified on direct examination in the trial of the case. 18 U.S.C. §3500. Accordingly, because the government never

called Rosales as a witness, the government was not obligated to disclose any information to the movant or defense counsel regarding Rosales' statement.

## Evidentiary Hearing

The movant's final request for an evidentiary hearing on his claims should be denied. (Cv-DE#1). A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations or affirmatively contradicted by the record. See Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989), citing, Guerra v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979). As previously discussed in this report, the claims raised are unsupported by the record or without merit. Consequently, no evidentiary hearing is required.

Conclusion

It is therefore recommended that the motion to vacate be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 30th day of January, 2009.

UNITED STATES MAGISTRATE JUDGE

cc:  Kyle Ebrite Williams, Pro Se
     Reg. No. 74793-004
     FCI - Forth Worth
     P.O. Box 19330
     Forth Worth, TX 76619

25

```
Diana Margarita Acosta, AUSA
United States Attorney's Office
505 S 2nd Street
Suite 200
Fort Pierce, FL 34950
```